Filed 12/29/21  Stinson v. An Luxury Imports of San Diego CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STACI STINSON, | |
| Plaintiff and Appellant, | G058999 |
| v. | (Super. Ct. No. 30-2018-00973112) |
| AN LUXURY IMPORTS OF SAN DIEGO, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Craig L. Griffin, Judge.  Affirmed.

Law Offices of Jim O. Whitworth and Jim O. Whitworth for Plaintiff and Appellant.

Kolar & Associates, Elizabeth L. Kolar and Tami S. Crosby, for Defendant and Respondent An Luxury Imports of San Diego, Inc., dba BMW Encinitas.

\*          \*          \*

1

Staci Stinson appeals from a judgment following an order granting summary judgment to respondent An Luxury Imports of San Diego, Inc., dba BMW Encinitas. Appellant contends the trial court erred in granting summary judgment because there is a triable issue of fact whether respondent breached the implied warranty of merchantability when it sold as new a used demonstrator vehicle. As explained below, the trial court correctly determined respondent is entitled to summary judgment, and accordingly, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Complaint*

On February 13, 2018, appellant filed a complaint for violation of the Song-Beverly Consumer Warranty Act (Act), alleging two causes of action. The first cause of action for breach of express warranty obligations was asserted solely against BMW of North America, LLC (BMW NA). The second cause of action for breach of implied warranty obligations was asserted against respondent and BMW NA.

The complaint alleged that in February 2017, appellant had leased a 2017 BMW X5, which "was, and is, a 'new motor vehicle' as defined" under the Act, from respondent dealership. It further alleged that the subject vehicle was "a new motor vehicle leased with the MANUFACTURER's new car warranty." Several months later, Stinson returned the vehicle to the dealership for repairs under the express warranty because "it exhibited defects, nonconformities, maladjustments, or malfunctions relating to [an] undisclosed accident." In the second cause of action for breach of the implied warranty, the complaint alleged that the vehicle was not "merchantable, as evidenced by the defects, nonconformities, maladjustments, and/or malfunctions" previously alleged.

B. *Motion for Summary Judgment*

On October 25, 2019, respondent moved for summary judgment, arguing the undisputed facts established that (1) the subject vehicle was and is merchantable; and

2

(2) by statute, it had no duty to disclose the presale repairs. In the motion, respondent relied in part on the deposition testimony of appellant's husband, who provided the background facts relating to the complaint. Appellant's husband testified that a week after taking possession of the subject vehicle, he noticed the back-left rim was discolored. After declining the dealership's offer to repaint the rim at no charge, he had the rim repainted for $125. Two weeks later, he was rear-ended while driving the vehicle. After taking the vehicle to a body shop for repairs, the repairman, a family friend, opined the vehicle had been in a prior accident based on the rear sensors being glued on and the use of spray foam on some plastic parts. Appellant's husband stated he was happy with the vehicle's performance and that it has driven "fine." The motion also asserted that after appellant filed her complaint, respondent conducted an investigation and discovered that the vehicle, a demonstrator, had sustained minor presale lot damage and that in December 2016, it was repaired for a total cost of $890.20.

Respondent argued the implied merchantability warranty claim was meritless because appellant's husband admitted the vehicle was fit for ordinary purposes, which satisfies the implied warranty. It further argued that, pursuant to Vehicle Code sections 9990 and 9991, it did not have to disclose the pre-sale repairs, which cost less than three percent of the vehicle's manufacturer suggested retail price (MSRP) because that amount was not material.

In support of the motion, respondent attached excerpts from the deposition of appellant's husband and a copy of the repair invoice. It also submitted the declaration of Daniel Barajas, the Director of the Collision Center, at BMW Encinitas. Barajas stated that he reviewed the repair invoice and photographs of the subject vehicle, and he opined the repair of the vehicle comported with BMW repair standards and did not involve any safety features. Respondent also submitted the declaration of Darrin Fetterolf, the General Manager of the dealership, who authenticated a disclosure document, signed by

3

appellant, acknowledging that the dealership had disclosed the vehicle had previously been used as a demonstrator vehicle.

C. *Opposition to Motion*

Stinson opposed the motion, arguing it was not timely and that "[a]s a matter of law selling a demo as new breaches the express and the implied warranty." She contended the sales contract stated the vehicle was new upon delivery when it was actually a used demonstrator vehicle. She further contended the vehicle's repair invoice showing the cost was less than three % of the vehicle's MSRP was not credible because the labor cost listed on the invoice was below market rate. In addition, she asserted the "repair invoice is not the only invoice for the damage" and the warranty was "reduced" due to the used nature of the vehicle. Appellant argued the subject vehicle was not merchantable because it would not pass without objection in the trade as a new vehicle.

In support of her opposition, appellant submitted a declaration from George Safar stating the "proper repair for just the damages BMW Encinitas agrees existed would be $3,477.01." In the declaration, Safar did not provide any credentials, claim any expertise, or explain his opinion on the cost of repairs. Appellant also submitted her own declaration disputing that the dealership properly disclosed the vehicle was a demonstrator vehicle.

D. *Reply*

In reply, respondent contended the motion was timely filed and served based on the trial date at the time it was noticed. Respondent argued the allegation the subject vehicle was used was a new allegation that could not be raised to defeat the motion, and that, in any event, the subject vehicle was a "new vehicle" within the meaning of Vehicle Code section 430. Respondent further argued appellant failed to provide any credible admissible evidence challenging the costs of presale repairs, noting, among other things, that Safar failed to lay a foundation for his personal opinion about the cost of repairs. Respondent also separately objected to the Safar declaration.

4

E. *Trial Court's Ruling*

The trial court granted the motion, finding it was timely based on the continued trial date. The court concluded respondent met its burden to show the subject vehicle was merchantable because it presented evidence the presale repair did not involve any safety features and was made to BMW standards, and the vehicle had performed after leasing. It further concluded appellant failed to show a triable issue of fact on the claim because she presented no admissible evidence the vehicle was used, had been in a prior undisclosed accident, or that the presale repairs were subpar or incomplete. The court also struck the Safar declaration for lack of foundation, and overruled all of appellant's evidentiary objections.

## II

### DISCUSSION

A. *Standard of Review*

A motion for summary judgment is properly granted "'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.) "The moving party bears the burden of showing the court that the plaintiff 'has not established, and cannot reasonably expect to establish, a prima facie case. . . .'" (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) "We review summary judgment appeals by applying the same three-step analysis applied by the trial court: First, we identify the issues raised by the pleadings. Second, we determine whether the movant established entitlement to summary judgment, that is, whether the movant showed the opponent could not prevail on any theory raised by the pleadings. Third, *if the movant has met its burden*, we consider whether the opposition raised triable issues of fact." (*Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 939-940.) "'Where the evidence presented by defendant does not support judgment in his favor, the

motion must be denied without looking at the opposing evidence, if any, submitted by plaintiff.'" (*Id.* at p. 940.)

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) "Because a summary judgment denies the losing party its day in court, we liberally construe the evidence in support of that party and resolve doubts concerning the evidence in that party's favor." (*Creekridge Townhome Owners Assn., Inc. v. C. Scott Whitten, Inc.* (2009) 177 Cal.App.4th 251, 255.)

B. *Respondent Is Entitled to Summary Judgment*

Here, the complaint alleged that respondent breached the implied warranty of merchantability under the Act because the subject vehicle had "defects, nonconformities, maladjustments, and/or malfunctions" caused by a prior undisclosed accident. As defined in the Act, the implied warranty of merchantability guarantees that "'"consumer goods meet each of the following: [¶] (1) Pass without objection in the trade under the contract description. [¶] (2) Are fit for the ordinary purposes for which such goods are used. [¶] (3) Are adequately contained, packaged, and labeled. [¶] (4) Conform to the promises or affirmations of fact made on the container or label." (Civ. Code, § 1791.1(a).)'" (*Isip v. Mercedes-Benz USA, LLC* (2007) 155 Cal.App.4th 19, 26.) "'The core test of merchantability is fitness for the ordinary purpose for which such goods are used. [Citation.]' [Citations.]" (*Ibid.*) Such fitness is shown if the product is "'in safe condition and substantially free of defects.'" (*Id.* at p. 27.) "[A] new car need not 'be perfect in every detail'; rather, its implied merchantability 'requires only that a vehicle be reasonably suited for ordinary use.'" (*Brand v. Hyundai Motor America* (2014) 226 Cal.App.4th 1538, 1546 (*Brand*).)

In its motion, respondent presented evidence that, after the subject vehicle was leased, there had been no complaints about its performance. Respondent also presented evidence that the presale repairs were de minimis under Vehicle Code section 9990, complied with BMW's repair standards, and did not involve any safety features. (Cf. *Brand*, *supra*, 226 Cal.App.4th at p.1547 ["an important consideration under the implied warranty is consumer safety"].) Vehicle Section 9990 allows a dealer to "repair minor damage and still lawfully be entitled to treat the car as new." (*Bourgi v. West Covina Motors, Inc.* (2008) 166 Cal.App.4th 1649, 1661.) Accordingly, respondent met its burden to demonstrate the undisputed facts showed the subject vehicle was merchantable when leased.

Because respondent met its burden, the burden thus shifted to appellant to show a triable issue of fact. Appellant failed to present any admissible evidence that any presale damage to the subject vehicle rendered the vehicle unsafe and not fit for driving, or exceeded the threshold permitted by Vehicle Code section 9990.

Appellant contends respondent breached the implied merchantability warranty when it failed to disclose the subject vehicle was a demonstrator and instead represented it was a new vehicle.[1] As an initial matter, the claim is arguably forfeited because the complaint does not allege the vehicle was a demonstrator. (See *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258 ["The complaint limits the issues to be addressed at the motion for summary judgment. The rationale is clear: It is the allegations in the complaint to which the summary judgment motion must respond."].)

---

[1] Appellant continued to assert at oral argument that the vehicle was used, despite the specific contrary allegations in the complaint, and that this breached the packaging component of the implied warranty. Counsel, while conceding that there was no precedent on point, cited *Isip* (*Isip, supra,* 155 Cal.App.4th 19) and *Brand* (*Brand v. Hyundai Motor America, supra,* 226 Cal.App.4th 1538) as support. As explained in the text, neither case supports appellant's argument.

Even if not forfeited, the only evidence in the record shows respondent disclosed the vehicle was a demonstrator. Moreover, Civil Code section 1793.22, subdivision (e)(2), provides that a "'new motor vehicle'" includes "a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty." "A demonstrator is a vehicle assigned by a dealer for the purpose of demonstrating qualities and characteristics common to vehicles of the same or similar model and type." (Civ. Code, § 1793.22, subd. (e)(2).) The Act expressly incorporates this definition of "'new motor vehicle.'" (*Park City Services, Inc. v. Ford Motor Co., Inc.* (2006) 144 Cal.App.4th 295, 305.) Thus, the subject vehicle is a "'new motor vehicle'" under the Act because it was sold with a manufacturer's new car warranty, and accordingly, appellant cannot show respondent is liable under the Act for representing or labeling the vehicle as "new."

In her appellate reply brief, appellant argues for the first time that the subject vehicle is a used vehicle because Vehicle Code section 665 defines "'used vehicle'" to include "unregistered vehicles regularly used or operated as demonstrators in the sales work of a dealer." We do not consider arguments raised only in a reply brief.[2]

Appellant also raises numerous issues which we reject for failure to provide record citation or reasoned argument. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 ["[i]f a party fails to

---

[2] However, appellant provides no legal authority showing this definition of "'used vehicle'" applies to claims brought pursuant to the Act, as opposed to claims brought under another statute or common law. For the same reason, the fact that Vehicle Code section 11713, subdivision (t), prohibits a dealer from advertising a demonstrator vehicle as "'new'" does not implicate the implied warranty claim. While appellant repeated these assertions at oral argument, counsel cited no authority supporting the position that these statutes supersede the definitions contained in the Act.

8

support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived. [Citation.]"].)  For example, she argues the motion was untimely because "[a]ll discovery and motion dates were cutoff in December 2019," but fails to address legal authority holding that a motion for summary judgment is timely if heard more than 30 days before the trial date at the time the motion was noticed, which happened here.  (See, e.g., *Green v. Bristol Myers Co.* (1988) 206 Cal.App.3d 604, 608-609 [trial court may properly hear summary judgment motion 30 days before continued trial date].)

Appellant also argued the trial court erred in not granting a continuance to allow counsel to obtain facts necessary to oppose the motion for summary judgment, but our review of the summary judgment hearing transcript and moving papers do not show either a request for a continuance, or a good faith showing that a continuance was necessary.  Her assertion that the trial court should have considered granting a continuance sua sponte is unsupported by any citation to authority.

Appellant faults the trial court for taking her motion to amend the complaint off calendar without a hearing or an order, arguing it showed the court was biased, but neither provides a record citation to the motion nor presents a reasoned argument why the action exceeded the court's discretion.  In any event, there was no prejudicial error.  "[I]f the proposed amendment fails to state a cause of action, it is proper to deny leave to amend." (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 230.)  Appellant argued that the amended pleading would assert the failure to disclose the vehicle was a demonstrator violated the Act, but, as discussed above, this claim is without legal merit.

Appellant also faults the trial court for granting two trial continuances without reopening discovery, but provides no hearing transcripts or reasoned argument why the court's orders prejudiced her defense against the motion for summary judgment. Finally, counsel challenges the award of sanctions, but neither provides a record citation

9

nor presents a reasoned argument why the sanctions order was improper. In sum, appellant has shown no basis for reversal of the judgment.

III

DISPOSITION

The judgment is affirmed. Respondent is entitled to its costs on appeal.


ZELON, J.*

WE CONCUR:


FYBEL, ACTING P. J.


GOETHALS, J.

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.